**The PEOPLE of the State of Colorado, Complainant,**

v.

**R. Jerry BENNETT, Attorney–Respondent.**

**No. 92SA467.**

Supreme Court of Colorado, En Banc.

Jan. 11, 1993.

Linda Donnelly, Disciplinary Counsel, Sandra J. Pfaff, Denver, for complainant.

R. Jerry Bennett, pro se.

PER CURIAM.

The assistant disciplinary counsel and the respondent in this attorney discipline proceeding have entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation and agreement and recommended that the respondent be disbarred and assessed the costs of the proceedings. We accept the stipulation and agreement, as well as the recommendation of the inquiry panel, and we order that the respondent be disbarred and be assessed costs.

## I

The respondent was admitted to the bar of this court on April 14, 1964, is registered as an attorney upon this court's official

records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). On May 6, 1991, we suspended the respondent from the practice of law for three years for entering into prohibited business transactions with a client, engaging in conduct involving dishonesty, and engaging in conduct prejudicial to the administration of justice. *See People v. Bennett,* 810 P.2d 661 (Colo. 1991). The present proceeding involves four additional and separate formal complaints filed by the assistant disciplinary counsel which were consolidated before the inquiry panel. In the stipulation and agreement, the respondent and the assistant disciplinary counsel stipulated to the following facts and violations of the Code of Professional Responsibility.

### A

On April 24, 1988, a judgment in the amount of approximately $85,000 was entered against the respondent in favor of the plaintiff in an action on a promissory note. When the action was filed in July 1987, the respondent was the owner of an interest in certain real property located in Colorado Springs. Following the commencement of the action, but before the judgment was entered, the respondent executed and recorded a quitclaim deed transferring his interest in that real property to his wife. During the same period of time, the respondent executed and recorded a deed of trust on real property owned by him and located in El Paso County in favor of his wife's parents. Finally, at about the time that the respondent filed for bankruptcy in August 1989, he recorded a quitclaim deed transferring his interest in real property located in Breckenridge, Colorado, to his wife.

The foregoing conveyances were made with the intent to hinder, delay, or defraud creditors, contrary to section 38–10–117, 16A C.R.S. (1982) (conveyances to defraud creditors are void). The respondent has admitted that his conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); as well as C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline).

### B

In September and October 1988, the respondent borrowed a total of $16,750 from a client, Jeanne Comstock. In exchange for the loans, the respondent executed unsecured promissory notes. After falling behind on his payments on the notes, the respondent renegotiated and combined the notes into a single, unsecured, promissory note at a lower interest rate. The respondent did not keep current on his payments on the combined note, and on January 1, 1989, at Comstock's request, the respondent executed a new promissory note in favor of Comstock's son. This note, which was in an amount determined to be that owed by the respondent for the previous loans, was also unsecured and was ultimately discharged in the respondent's bankruptcy proceedings.

The respondent has stipulated that he failed to provide sufficient disclosure to Comstock and her son with respect to the business transaction the respondent entered into with Comstock. He failed to advise his client Comstock of the conflict of interest between them, he did not encourage Comstock to obtain advice from independent counsel, and he did not provide her with information relevant to his financial condition. The foregoing conduct violated DR 5–104(A) (a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure); C.R.C.P. 241.6(2) (any act or omission violating accepted rules or standards of legal

ethics constitutes grounds for discipline); and C.R.C.P. 241.6(3).

## C

Between December 1983 and June 1988, the respondent borrowed over $40,000 from a client, Henry F. Borowski, in a number of separate transactions. Despite Borowski's requests that he do so, the respondent never secured the loans by any deeds of trust on property belonging to the respondent. In addition, the respondent did not make all of the payments on the unsecured promissory notes when they were due. The notes were subsequently discharged in the respondent's bankruptcy proceeding. The respondent has admitted that he failed to provide Borowski with sufficient disclosure regarding the respondent's business dealings with him, that he failed to advise Borowski of the conflict of interest between them, that he did not encourage Borowski to obtain advice from independent counsel, and that he did not provide Borowski with information relevant to the respondent's financial condition. As the respondent stipulated, his conduct violated DR 1–102(A)(4), DR 5–104(A), and C.R.C.P. 241.6(2) and (3).

## D

In 1986, the respondent represented Hal and Anne Woods in the sale of real property. The respondent had been their attorney since 1979, and when he delivered the check for the net proceeds of the sale to them, the Woodses decided to invest the money in the respondent's nursing home project. The respondent told the Woodses that he would provide them with a promissory note secured with a deed of trust in exchange for their $50,000 loan. Nevertheless, the respondent failed to properly secure the loan. When he filed for bankruptcy, he told the Woodses that he would repay their $50,000 in any event. Through the bankruptcy proceedings, the respondent agreed to pay the Woodses $18,000 in monthly installments, with a confession of judgment in the amount of $42,000 if there was a default. The respondent and the assistant disciplinary counsel have stipulated that, as of the date of the stipulation, the respondent had made all payments that had become due. The respondent's conduct was in violation of DR 5–104(A) and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

## II

The inquiry panel has recommended that the respondent be disbarred for his professional misconduct, and the respondent has consented to disbarment. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp. 1992) (ABA *Standards*), in the absence of aggravating or mitigating circumstances, disbarment is generally appropriate when, without the informed consent of the client, a lawyer "engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to the client...." Further, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *Id.* at 4.61. *See also id.* at 5.11(b) (disbarment is warranted when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.").

The parties stipulated to the following factors in aggravation: (1) prior disciplinary offenses including four letters of admonition, a private censure, and a three-year suspension, *id.* at 9.22(a); (2) a dishonest and selfish motive, *id.* at 9.22(b); (3) a pattern of misconduct, *id.* at 9.22(c); (4) multiple offenses, *id.* at 9.22(d); (5) a refusal to acknowledge the wrongful nature of conduct, *id.* at 9.22(g); (6) vulnerability of

victim, *id.* at 9.22(h); (7) substantial experience in the practice of law, *id.* at 9.22(i); and (8) indifference to making restitution, *id.* at 9.22(j). In mitigation, the respondent has been cooperative in the present disciplinary proceedings, *id.* at 9.32(e), and he has agreed to provide partial restitution to the Woodses.

Given the breadth and the gravity of the respondent's professional misconduct, we determine that disbarment is the only appropriate sanction. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct, and the recommendation of the inquiry panel.

### III

It is hereby ordered that R. Jerry Bennett be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that the respondent pay the costs of these proceedings in the amount of $859.02 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.