**In re George E. KERSEY, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 344499).**

**No. 04–BG–469.**

District of Columbia Court of Appeals.

Argued Oct. 5, 2005.

Decided April 27, 2006.

George E. Kersey, pro se.

H. Clay Smith, III, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Acting Bar Counsel, at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and NEBEKER, Senior Judge.

PER CURIAM:

The Board on Professional Responsibility (the "Board") recommended that the respondent, George E. Kersey, a member of our Bar, be disbarred in the District of Columbia as reciprocal discipline from a New Hampshire proceeding. Kersey filed an exception to the Board's Report and Recommendation arguing that the discipline imposed by the Supreme Court of New Hampshire was improper and based on incorrect findings of law and fact. Despite Kersey's claims, we adopt the recommendation of the Board.

I.

The respondent is a patent attorney who was admitted to the Bar of the District of

Columbia by motion on March 17, 1981. The respondent is also a member of the Bars of New York and New Jersey, and was a member of the Bar of Massachusetts prior to July of 2005.[1] *In re Kersey,* 444 Mass. 65, 825 N.E.2d 994 (2005). The original conduct leading to the New Hampshire disciplinary decision before this court is an outgrowth of the respondent's 1991 divorce in Vermont. The Family Court judge in that proceeding held Kersey in contempt on three occasions for "willful violations" of court orders. As a result of the contempt orders, a single justice of the Supreme Judicial Court for Suffolk County, Massachusetts ruled that the respondent's conduct violated three disciplinary rules and suspended him from practice in that jurisdiction for three months with an additional requirement that he purge himself of the contempt orders before reapplying for admission.[2] *In re Kersey,* 432 Mass. 1020, 733 N.E.2d 545 (2000). The respondent appealed that suspension to the full Supreme Judicial Court of Massachusetts, but the court affirmed the single justice's imposition of suspension. *Id.* Based on that sanction, this court imposed a reciprocal suspension of three months with a requirement that he show fitness for practice before seeking reinstatement in the District. *In re Kersey,* 775 A.2d 1106, 1107 (D.C.2001) (per curiam).

On September 20, 2001, following the Massachusetts Court suspension, the respondent's home state of New Hampshire moved forward with reciprocal disciplinary action, levying a three-month suspension when the respondent failed either to address the Vermont contempt orders or to obtain readmission to the Massachusetts bar. *Kersey's Case,* 147 N.H. 659, 797 A.2d 864, 865 (2002). In addition to the

1. The respondent received a formal reprimand from the Supreme Court of New Jersey in June of 2005.

2. The Massachusetts Supreme Court ruled that by repeatedly violating court orders, Kersey had violated S.J.C. Rule 3:07, Canon 1, DR 1–102(A)(5) and (6), and Canon 7, DR 7–106(A).

three-month suspension, the New Hampshire Supreme Court ordered the respondent to refrain from seeking any additional clients or cases and to surrender any client files that he was in possession of to a court-appointed attorney. *Id.* Despite assertions that he was not in possession of any active client files, the court-appointed attorney learned that the respondent had two cases pending before the United States District Court for the District of New Hampshire and one case before the New Hampshire Supreme Court. *Kersey's Case, supra,* 797 A.2d at 865–66. The respondent ignored repeated requests by the court-appointed attorney to turn over the client files and to comply with the court order, leading the New Hampshire Court to order the respondent to show cause why he should not be held in contempt. *Id.* The respondent answered the show cause order by arguing that his appearance before the New Hampshire Supreme Court did not fall under the purview of the court's order because he believed himself to be the real party in interest and acting *pro se. Id.*

On December 19, 2001, the New Hampshire Court referred this matter to a referee for a hearing to decide whether or not the respondent had violated a court order and should be held in contempt. *Kersey's Case, supra,* 797 A.2d at 865–66. The court ordered the respondent to appear with any "files relating to cases or matters in which he was currently performing work for clients ... in state or federal courts in which he has filed an appear-

ance." *Id.* The respondent attended the hearing but failed to bring any case files, leading to a finding by the referee that the respondent was in contempt for violating the earlier orders. *Id.* The New Hampshire Court adopted the findings and recommendations of the referee, referring the matter to the New Hampshire Professional Conduct Committee ("Committee") for disbarment hearings. *Id.*

In September 2002, the Committee petitioned the Supreme Court of New Hampshire to disbar the respondent. *Kersey's Case,* 150 N.H. 585, 842 A.2d 121, 122 (2004). The court again referred the matter to a referee who found by clear and convincing evidence that the respondent was in contempt of court and had violated New Hampshire Rules of Professional Conduct. *Id.* The New Hampshire Court, following oral argument, adopted the referee's findings and ordered that the respondent be disbarred. *Kersey's Case, supra,* 842 A.2d at 123.

On May 11, 2004, Bar Counsel filed with this court a copy of the New Hampshire disbarment order, and on May 18, 2004, this court issued an order suspending the respondent on an interim basis.[3] The court directed the Board to recommend whether or not to proceed with reciprocal discipline or to proceed *de novo,* giving Bar Counsel thirty days to inform the Board of its position regarding reciprocal discipline and the respondent ten days thereafter to show cause why identical, greater, or lesser discipline would be ap-

---

3. On April 9, 2004, Bar Counsel for the Commonwealth of Massachusetts filed a petition for reciprocal discipline seeking disbarment of the respondent following the New Hampshire disciplinary decision. *In re Kersey, supra,* 825 N.E.2d at 996. On July 20, 2004, after a hearing, a single justice of the Supreme Judicial Court of Massachusetts ordered an immediate disbarment of the respondent from the practice of law in that jurisdiction. *Id.* The respondent filed a re-

quest for reconsideration, which was denied, and then appealed to the full court, asserting the same arguments that he now brings before this court. *Id.* Finding that the respondent "was no longer worthy of the trust the courts and public must place in [his] representations, [his] conduct, and [his] character," the Supreme Judicial Court of Massachusetts affirmed the decision of the single justice disbarring the respondent. *In re Kersey,* 444 Mass. at 71, 825 N.E.2d at 998.

propriate. On May 27, 2004, the respondent wrote a letter to this court, Bar Counsel and the Board in an effort to comply with D.C. Bar R. XI, § 14(g),[4] noting his new address in Massachusetts and stating that while he had not received the court's May 18 order, he was aware of it based on a phone conversation with the Board's Executive Attorney. Bar Counsel filed her statement on June 16, 2004, recommending disbarment and sent a copy to the respondent to his known addresses in New Hampshire and Massachusetts.[5] Those mailed notices were not returned undelivered. The respondent had not filed a statement with the Board or participated in the Board proceedings, other than his letter of May 24, when the Board issued its report and recommendation on October 25, 2004.[6]

## II.

Kersey contends that the Board's recommendation that he be disbarred is erroneous because the initial disciplinary decisions in Massachusetts and New Hampshire, were based on improper findings and that reciprocal discipline is inappropriate. "Under Rule XI, § 11(c) of this court's Rules Governing the Bar, 'reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence,' that the case falls within one or more of five specifically enumerated exceptions."[7] *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). "The rule thus creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *Id.* (citing *In re Velasquez*, 507 A.2d 145, 146–47 (D.C.1986)).

■■■ "We have ... specifically held that an attorney waives the right to contest the imposition of reciprocal discipline when he or she does not oppose the pro-

---

**4.** Rule XI, § 14(g) states in part:
   Within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney shall file with the Court and the Board an affidavit:
   (1) Demonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule;
   (2) Listing all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and
   (3) Certifying that a copy of the affidavit has been served on Bar Counsel. The affidavit shall also state the residence or other address of the attorney to which communications may thereafter be directed.

**5.** The respondent stated in oral argument that he did not receive any additional correspondence from Bar Counsel or the Board on Professional Responsibility after his receipt of the draft order, but did state that he was aware of the impending disbarment proceeding as a result of the telephone conversation he had with the Board's Executive Attorney and his receipt of the draft.

**6.** The respondent filed an opposition to the report and recommendation of the Board on November 10, 2004.

**7.** Reciprocal discipline shall be imposed unless the attorney demonstrates that:
   (1) The procedures elsewhere were so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
   (2) There was such infinity of proof establishing the misconduct as to give to the clear conviction that the Court could not, consistently with it's duty, accept as final the conclusion on that subject; or
   (3) The imposition of the same disciple by the Court would result in grave injustice; or
   (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
   (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.
   D.C. Bar R. XI, § 11(c)(1–5).

posed discipline before the Board or fails to respond to the court's show cause order." *In re Holdmann,* 834 A.2d 887, 889 (D.C.2003) (citing *In re Harper,* 785 A.2d 311, 316 (D.C.2001) ("treating an opposition filed for the first time in this court as equivalent to a timely response to the show cause order thwarts the operation of a disciplinary system that depends heavily on the Board's expertise in making recommendations")). When an attorney subject to discipline fails to participate in the proceedings before the Board, "the imposition of identical discipline should be close to automatic, with minimum review by ... this court." *In re Cole,* 809 A.2d 1226, 1227 n. 3 (D.C.2002) (per curiam). This court should review a Board decision to impose reciprocal discipline only for " 'an obvious miscarriage of justice' " when the "foreign discipline [is] not opposed at the Board level." *Harper, supra,* 785 A.2d at 316 (quoting *In re Spann,* 711 A.2d 1262, 1265 (D.C.1998)).

■ Kersey argues that all of the five exceptions to the imposition of reciprocal discipline apply to him because the New Hampshire Court did not heed his arguments that it lacked the jurisdiction to require production of files relating to matters before federal courts and that he was not engaged in the unauthorized practice of law in that state when he appealed solely to challenge an award against him personally. However, as Mr. Kersey neither responded to the court's show cause order nor participated in the Board pro-

ceedings, this court must apply the presumption in favor of imposing reciprocal discipline, unless the respondent can demonstrate some showing of manifest injustice.[8]

■ The respondent suggests that his initial New Hampshire disbarment for representing himself in a fee award dispute rises to the level of injustice that would warrant this court applying the five Rule 11 exceptions, even though he did not participate in the Board proceedings. We disagree. The respondent's initial disbarment evolved from a finding that he was in contempt for his failure to obey a court order, that in the words of the New Hampshire Supreme Court, barred him from the "continued ... practice of law after the effective date of [that] order." *Kersey's Case, supra,* 797 A.2d at 866. The New Hampshire Supreme Court has interpreted its own rules of professional conduct in finding that Mr. Kersey's failure to turn over client files and his *pro se* representation in the fee award dispute were violations of that order, and their ruling is entitled to some deference. We need not decide whether it would violate our own professional rules if, despite a court order not to practice law, an attorney here represented himself in an appeal solely of an award of attorney's fees against him personally. The New Hampshire disciplinary decision emerged from the violation of a court order, and that conduct would still be a violation of the rules of professional responsibility in this jurisdiction. Moreover,

---

**8.** The respondent asked the court to forgive his failure to participate in the Board proceedings at oral argument because he did not receive any subsequent correspondence or written notice after receiving a copy of the draft disbarment order that the Board mailed on May 11, 2004. However, as this court noted in *Harper,* "our decisions preclude the leniency the respondent asks us to adopt for a claimed unintentional but inexcusable bypass of the procedure for opposing reciprocal dis-

cipline." 785 A.2d at 312. The respondent received notice of the impending Board proceedings from both the draft order that the Board mailed to him on May 11 and the telephone conversation that he had with the Board's Executive Attorney. This court will not permit the respondent to oppose the Board recommendation in this court for the first time when he had ample opportunity to do so below.

the New Hampshire Supreme Court found that respondent's disregard of its order to bring all cases and client files to the contempt hearing "was nothing short of willful and blatant." *Id.* As such, we find no evidence in the record that the respondent experienced any harm that would rise to the level of an "obvious miscarriage of justice" warranting a departure from the imposition of reciprocal discipline. *See Cole, supra,* 809 A.2d at 1227 n. 3 (citing *Spann, supra,* 711 A.2d at 1265).

Accordingly, it is ORDERED that the respondent, George E. Kersey, is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of disbarment shall begin to run when the respondent files an affidavit that fully complies with D.C. Bar R. XI, § 14(g).[9]

*So ordered.*

---

9. "[A] disbarred attorney shall not be eligible for reinstatement until five years shall have elapsed following the attorney's compliance with section 14." D.C. Bar R. XI, § 16(c). The Board notes in its Report that the respondent's May 27, 2004 declaration was insufficient because it failed to address D.C. Bar R. XI, § 14(a-d), which covers notice to clients, notice to adverse parties, and delivery of client files and property. The respondent's disbarment period will not begin to run until he has submitted an affidavit that complies with § 14.